**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| EVERTSON INTERNATIONAL DE VENEZUELA, S.C.A., AND EVERTSON INTERNATIONAL, | § § § § | |
| *Plaintiffs*, | § § | |
| vs. | § § | CASE NO. 4:26-cv-3168 |
| PETROLEOS DE VENEZUELA, S.A., PETROMONAGAS, S.A., PDVSA SERVICIOS PETROLEROS, S.A., PDVSA PETRÓLEO, S.A., AND PETROCEDEÑO, S.A. | § § § § § | |
| *Defendants*. | § § | |

**<u>PLAINTIFFS' ORIGINAL COMPLAINT</u>**

Plaintiffs Evertson International ("Evertson International") and Evertson International de Venezuela, S.C.A. ("EIV", and together with Evertson International, "Evertson" or "Plaintiffs") file this Complaint against Defendants Petroleos de Venezuela, S.A. ("PDVSA"), Petromonagas, S.A., PDVSA Servicios Petroleros, S.A., PDVSA Petróleo, S.A., and Petrocedeño, S.A. (collectively, "Defendants"), and in support show as follows.

**I.
SUMMARY OF THE DISPUTE**

1.     Plaintiffs bring this suit to collect over $22 million of unpaid receivables from Venezuela's state-owned oil company (PDVSA) and its affiliates for work that Plaintiffs performed for Defendants' benefit, but that Defendants have failed to pay in accordance with the parties' agreements.

2.      For several years, Evertson provided oil and gas drilling services to PDVSA-owned oil wells in Venezuela, pursuant to the parties' agreements. Evertson performed this work in reliance on the Defendants' contractual and actual promises to pay. However, over the course of the parties' relationship, which has now spanned over a decade, the PDVSA entities have made only partial payments on outstanding receivables, repeatedly breaching their contractual obligations to Plaintiffs.

3.      Despite Plaintiff's continued efforts to collect the outstanding receivables, Defendants have skirted their payment obligations at every turn, acknowledging the debts but refusing to pay, and even worse, coercing Plaintiffs to continue operating with payment. In some instances, Defendants threatened to seize Evertson's equipment if EIV stopped operating, notwithstanding that the contracts expressly provide EIV with the right to terminate the contracts for non-payment. In other instances, Evertson employees were personally threatened. Thus, for fear of having Evertson's valuable equipment seized or its entire business expropriated (which Evertson understands PDVSA has done to other companies), EIV continued to operate in Venezuela until it fully performed under its contracts with the Defendants, even though it was not getting paid for its work. Now, Plaintiffs want to be rightfully compensated for the work they provided to and the benefits they conferred on Defendants.

## II.
## PARTIES

4.      Plaintiff Evertson International is a company incorporated in the Cayman Islands with its principal place of business at 16225 Park Ten Place, Suite 500, Houston, Texas 77084. Evertson International is registered to do business in Texas and at all times relevant to the Complaint, operated out of its office in Houston, Texas. Evertson International is owned by

2

Southard Family LLP, a Wyoming limited liability partnership, and Southard Energy Investments Inc., a Texas company.

5.      Plaintiff Evertson International de Venezuela, S.C.A., an affiliate of Evertson International, is a drilling services company. It is domiciled in Venezuela, and has offices in Anzoátegui, Venezuela. EIV's principal place of business is 16225 Park Ten Place, Suite 500, Houston, Texas 77084. EIV is registered to do business in Texas, and at all times relevant to the Complaint, many of its operational and management decisions were made from its office in Houston, Texas.  EIV is owned by Southard Family LLP, a Wyoming limited liability partnership, and Southard Energy Investments Inc., a Texas company.

6.      Defendant Petroleos de Venezuela, S.A. ("PDVSA") is a capital stock corporation (*sociedad anónima*) incorporated in Venezuela and wholly-owned by the Republic of Venezuela. It is Venezuela's state-owned oil company, created by government decree on August 30, 1975, after the nationalization of the oil industry in Venezuela. PDVSA's principal office is at Avenida Libertador con calle El Empalme, Complejo MinPetroleo-PDVSA, La Campiña, Edificio Petróleos de Venezuela, Torre Este, Caracas 1010, Distrito Capital, Venezuela. PDVSA is the parent company of all PDVSA group entities. PDVSA is wholly owned by the Venezuelan state, with no private shareholders. As a result, all subsidiaries and affiliates within the PDVSA group are, directly or indirectly, owned and ultimately controlled by the Venezuelan government acting through PDVSA. PDVSA is neither a citizen of a State of the United States, nor created under the laws of any third country. PDVSA is an organ of Venezuela and thus qualifies as an agency or instrumentality of Venezuela under 28 U.S.C. § 1603(b). PDVSA may be served with process under the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or

Commercial Matters (the "Hague Convention"), of which Venezuela is a signatory. Fed. R. Civ. P. 4(f).

7.      Defendant Petromonagas, S.A. ("Petromonagas") is a commercial company incorporated and domiciled in Caracas, Venezuela, with its principal office at Edificio Centro Bahía de Pozuelos (CBP), Torre CD, Piso 2, en Barcelona, Estado Anzoátegui. Petromonagas is controlled and operated solely by PDVSA, which holds a controlling or majority equity stake in the venture. As such, Petromanagas is an agency or instrumentality of Venezuela under 28 U.S.C. § 1603(b). Petromonagas may be served with process under the Hague Convention, of which Venezuela is a signatory. Fed. R. Civ. P. 4(f).

8.      Defendant PDVSA Servicios Petroleros, S.A. ("PDVSA Servicios Petroleros"), a subsidiary of PDVSA Servicios, S.A., is incorporated and domiciled in Caracas, Venezuela, with its principal executive office at Edificio Petróleos de Venezuela, Torre Este, Piso 9, Avenida Libertador con calle El Empalme, La Campiña, Caracas 1010-A, Distrito. As part of PDVSA's network of operational service subsidiaries controlled by PDVSA, PDVSA Servicios Petroleros is an agency or instrumentality of Venezuela under 28 U.S.C. § 1603(b). PDVSA Servicios Petroleros may be served with process under the Hague Convention, of which Venezuela is a signatory. Fed. R. Civ. P. 4(f).

9.      Defendant PDVSA Petróleo, S.A. ("PDVSA Petróleo") is an affiliate of PDVSA, incorporated and domiciled in Caracas, Venezuela, with its principal office at Avenida Libertador con Calle El Empalme, Edificio Petróleos de Venezuela, Piso 8, Torre Oeste, Caracas, Distrito Capital, Venezuela. PDVSA Petróleo is controlled by PDVSA and thus an agency or instrumentality of Venezuela under 28 U.S.C. § 1603(b). PDVSA Petróleo may be served with process under the Hague Convention, of which Venezuela is a signatory. Fed. R. Civ. P. 4(f).

10.    Defendant Petrocedeño, S.A. ("Petrocedeño"), is incorporated and domiciled in Caracas, Venezuela, with its principal office at Avenida Libertador, Edificio PDVSA Torre Oeste, Piso 8, Caracas, Venezuela. Following the exit of TotalEnergies and Equinor from this venture, PDVSA, acting through its subsidiary Corporación Venezolana de Petróleo, S.A., acquired 100% of Petrocedeño's shares. As such, Petrocedeño is controlled by PDVSA and thus an agency or instrumentality of Venezuela under 28 U.S.C. § 1603(b). Petrocedeño may be served with process under the Hague Convention, of which Venezuela is a signatory. Fed. R. Civ. P. 4(f).

## III.
## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction and personal jurisdiction over this complaint pursuant to 28 U.S.C. § 1330 and 28 U.S.C. § 1602 *et seq.,* including the commercial activity exception to immunity under 28 U.S.C. § 1605(a)(2).

12.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(f)(1) because a substantial part of the events or omissions giving rise to this case occurred in this district.

## IV.
## BACKGROUND FACTS

**A.    Evertson's Drilling Services Business in Venezuela**

13.    Evertson International and EIV are part of a privately-held, U.S.-based group of companies (collectively, the "Evertson Group") with over 40 years of experience in the energy industry. Although the Evertson Group started its drilling services segment in the United States, in the 1990s, the Evertson Group expanded its operations to Venezuela with the establishment of Evertson International, and later, EIV, to provide drilling services in Venezuela.

14.    Evertson International and EIV offer a variety of drilling, completion, and overhaul services in Venezuela. Specifically, EIV has engaged in a variety of drilling, completion, and

workover services (i.e., services that involve pulling and replacing completion or production hardware to extend the life of an oil well) in Venezuela. When the work at issue was undertaken in Venezuela, the equipment procurement (including sourcing of critical components, spare parts, and third-party services), maintenance planning, and technical support for the rigs were all coordinated from Evertson International's offices in Houston, Texas. Evertson International owns the rigs and equipment used in Venezuela, and charged an intercompany rental fee to EIV to rent necessary equipment for the Venezuelan operations. Thus, while the physical drilling services and replacement operations may have occurred in Venezuela, a large part of the overall services for the work were provided from Houston, Texas.

15.     Given the structure of Venezuela's energy industry, Evertson has historically engaged in transactions directly and indirectly with PDVSA and its affiliates, including PDVSA Servicios Petroleros, to perform drilling and workover services in Venezuela. Evertson has also transacted with Venezuelan ventures and private entities such as Petromonagas and Petrocedeño, to perform these services.

16.     In 2015, Evertson began a fleet modernization and expansion program, which resulted in improvements to existing drill packages and the addition of new drills. As part of these modernization efforts, Evertson expanded its Venezuelan fleet to seven rigs, and expanded its services range from pump changes and completions to drilling vertical wells and laterals.

17.     Evertson International's operations are managed from its Houston, Texas and Colorado Springs, Colorado offices, where its executive officers and managers oversee the day-to-day condition of the rig assets and their rental to EIV. Evertson International's management team, all located in the United States, work closely with EIV's Venezuelan management team, all of whom are Venezuelan citizens located in El Tigre, Venezuela, to assist in the administration of

6

their operational and financial functions. EIV maintains a bank account at a financial institution in Houston, Texas, and the financial impacts of Defendants contractual breaches described herein have been directly felt by EIV and Evertson International in the United States.

**B.**    **Historical Transactions with Defendants**

18.    EIV has entered into several contracts with Defendants to perform certain work outlined in PDVSA's Well Operation Program, which included instructions for drilling, rehabilitation, coating, cementing, testing, completion, stimulation, sampling, logging, and abandonment programs of PDVSA's wells. The contracts contemplated that EIV carry out work for each well, including the transfer of the rig to and from its location, installation of the head, the cleaning of the head and the well platform. In the case of plugging or abandonment of wells, the works concluded with the recovery of the equipment specified in the Well Operation Program. Nine contracts (collectively, the "Services Contracts") are at issue in this action.[1]

| Contract | Contracting Defendant / Client |
|---|---|
| Contract No. 4600044405 (Evertson-01) | Petromonagas; PDVSA Petróleo |
| Contract No. 4600010951 (Evertson-01) | Petromonagas |
| Contract No. 4600055905 (Evertson-02) | PDVSA Servicios Petroleros; PDVSA Petróleo |
| Contract No. 4600077872 (Evertson-03) | Petrocedeño |
| Contract No. 4600068354 (Evertson-04)[2] | Petrocedeño; PDVSA Petróleo |
| Contract No. 4600078385 (Evertson-05) | Petrocedeño |
| Contract No. 3N-069-008-D-18-S-0046 (Evertson-06) | Petrocedeño |
| Contract No. 4600013750 (Evertson-07) | Petrocedeño |
| Contract No. 4600067729 (Evertson-08) | PDVSA Servicios Petroleros |

---

[1] These Services Contracts and their attachments and amendments are hereby incorporated by reference. Because the Services Contracts are in Spanish and incredibly voluminous when accompanied by English translations, Plaintiffs have not attached the contracts to the Complaint but will submit the contracts and translations upon request or at an appropriate time.

[2] Contract number 3N-069-004-D-17-N-0361 was later assigned contract number 4600068354 in Defendant's system. As such all invoices issued under 3N-069-004-D-17-N-0361 are considered under contract number 4600068354 for the purposes of this action.

19.     The terms of the Services Contracts are all substantially identical, with differences limited primarily to operational details (rig, contract term, and economics), and no differences affecting terms governing payment obligations or termination. Each Services Contract covered a specific rig for a fixed period. The relevant PDVSA entity had the right to extend the Services Contract under the same terms, with the exception of fees, which could be renegotiated. The contracts are each governed by Venezuelan law.

20.     Although different PDVSA entities or joint ventures are party to each Services Contract, on information and belief, these PDVSA-related entities (including Petromonagas, PDVSA Servicios Petroleros, PDVSA Petróleo, and Petrocedeño) were all controlled by PDVSA. Before the recent enactment of Venezuela's Organic Hydrocarbons Law on January 29, 2026, PDVSA and its subsidiaries and affiliates, including the PDVSA Defendants named herein, did not consistently observe corporate formalities typical of genuinely independent commercial enterprises. The PDVSA group entities generally operated under unified state-driven policies and strategic plans determined at the PDVSA parent level. PDVSA's governance is 100% state-owned, politically directed, and managed according to governmental policy rather than by independent corporate governance at each affiliate, leading to a blurring of corporate separateness in practice. On information and belief, PDVSA and its affiliates share common offices, branding, and personnel, and the subsidiaries operate without genuinely independent boards, management structures, or decision-making authority separate from PDVSA.

21.     Evertson's management negotiated each of the Services Contracts with Defendants on behalf of EIV. The contract negotiations with Defendants, including negotiations related to rates, extensions, and payment issues, were conducted in significant part by Evertson personnel based in Houston, Texas. Further, commercial and management decisions related to the contracts

8

(pricing, commercial terms, extensions, invoicing strategy, and payment follow-up) were coordinated and approved from Houston, Texas. Evertson's senior management, finance, and treasury functions responsible for contract performance oversight, accounting, and receivables collection were all based in Houston, Texas. As such, much of the ongoing commercial communications regarding the Services Contracts over the course of the parties' relationship occurred in Houston, Texas, and the effects of Defendants breaches of these Services Contracts were directly felt in the United States.

22.     For each contract, upon completion of certain services, EIV submitted detailed invoices to the relevant PDVSA Defendant, describing the services and work performed during the applicable service period noted on the invoice, which typically ranged from a few days to one month. The invoices were typically billed in two separate components: (i) a U.S. dollar–denominated portion corresponding to the equipment component of the services performed, and (ii) a bolívar-denominated[3] portion corresponding to the labor component of the work performed. EIV separately invoiced the amounts due in U.S. dollars and the amounts due in bolívars. The amount of the U.S. dollar-denominated invoices far exceeds the amount of bolívar-denominated invoices.[4]

23.     The invoices were issued for payment within 30 days directly to EIV's designated bank account in Houston, Texas. With respect to the U.S. dollar-denominated invoices, EIV and the relevant PDVSA Defendant had a currency recognition agreement (attached to each invoice), in which PDVSA recognized payment of the invoices in U.S. currency and to a U.S. located

---

[3] The bolívar is the official currency of Venezuela. At the time of the parties' contractual relationship, the "*bolívar Fuerte*" was the applicable Venezuelan currency. However, between 2018 and 2021, Venezuela carried out two currency redenominations. In August 2018, Venezuela carried out a redenomination of *bolívar fuertes* to "*bolívar soberanos*," such that 100,000 *bolívar fuertes* were exchanged for 1 bolívar soberano. Then, in October 2021, a second redenomination occurred, when 1,000,000 bolívar soberanos were exchanged for 1 "*digital bolívar.*"

[4] Plaintiffs reserve the right to seek payment of the bolívar-denominated invoices in this action, but have not currently factored them into the amounts owed to Evertson.

financial institution, so long as there was no legal regulation that prevented payment in U.S. dollars. Under the Services Contracts, the relevant PDVSA Defendant then had 20 days to object to the invoices, and if there was no objection, payment was to be made in full within 30 days.

24.     Under the agreed-upon contract administration procedures, which EIV followed for each invoice issued, a service verification record, or "*Hoja de Entrada de Servicios*" ("Service Entry Sheet"), had to be submitted to the contract administrator in PDVSA's system before EIV could generate an invoice. The Service Entry Sheet confirmed the services performed. Once the Service Entry Sheet was issued, EIV could generate an invoice to the appropriate PDVSA Defendant. The invoices themselves then included the supporting documentation issued by the PDVSA Defendant that confirmed the services performed and reflected the PDVSA Defendant's acknowledgment of the obligation to pay the invoice in U.S. dollars.

25.     It should be noted that, on several occasions, EIV delivered services pursuant to the Services Contracts that were fully performed and verified by PDVSA, but for which a Service Entry Sheet was never issued. This made it impossible to formally invoice Defendants for those services, which largely consisted of workover services provided to Defendants. As a result, $7,634,799.22 in unbilled receivables have accumulated, but EIV cannot properly invoice Defendants for these services.

26.     With respect to nonpayment, each of the Services Contracts contains materially identical language that allows EIV to terminate the contract for nonpayment. Below is an English translation of Section 4.7 of Contract No. 4600044405, the Major Services Contract Evertson 01 Rehabilitation Drill (500 HP) with Petromonagas:

> THE CONTRACTOR may terminate this CONTRACT in the event that PETROMONAGAS S.A. fails to make payments for the amounts not objected to within ninety (90) calendar days following the date of receipt of any invoice, but provided that THE CONTRACTOR notifies PETROMONAGAS S.A. in writing

10

of its intention to do so, alleging the lack of said payments and that PETROMONAGAS S.A. had not corrected the lack within ten (10) calendar days following the receipt of such notification.

27.    Section 4.3 of that same contract further acknowledges that Petromonagas would be liable for the payments due at the time of such termination.

28.    However, for the reasons discussed below, EIV was unable to practically exercise its termination rights under the Services Agreements due to the PDVSA Defendants' threats and coercive actions.

## C.    Accumulation of Billed Receivables

29.    Pursuant to the Services Contracts, EIV invoiced the PDVSA Defendants for its services once completed. From 2015 through 2020, the Defendants approved and paid over 400 U.S. dollar-denominated invoices totaling over $83 million. These payments were paid into EIV's designated bank account in Houston, Texas. However, beginning in late 2014, PDVSA's financial condition began to deteriorate and unpaid invoices for services that EIV rendered pursuant to the Services Contracts began to accumulate.

30.    By August 25, 2017, EIV's receivables balance under the Services Contracts totaled $10,233,689.79. On information and belief, around this time, the PDVSA Defendants promised to make monthly payments to Evertson of $1,000,000 to pay down the outstanding debts.

31.    However, on August 25, 2017 Executive Order 13808 ("EO 13808") was issued, which prohibited, among other things, collecting "New Debt" (i.e., debt issued on or after August 24, 2017, including invoices for services) with a maturity greater than 90 days from PDVSA or its affiliates. Evertson continued to provide services for the Defendants after the issuance of EO 13808, while carefully complying with EO 13808's terms. During this time, Evertson's PDVSA-related customers were able to pay some of EIV's invoices for services within the prescribed 90-

11

day window, but certain of its invoices were, despite Evertson's diligent collections efforts, not paid within their respective 90-day periods, rendering them uncollectible under EO 13808.

32.     From August 25, 2017 to the present, Defendants have failed to pay an additional $12,571,378.30 in billed receivables related to work that EIV performed under the Services Contracts. In total, Defendants have failed to pay 610 invoices, totaling approximately $22,805,068.10, excluding interest, for services EIV provided to Defendants. EIV properly submitted these invoices per the parties' Services Contracts and billing procedures. Many of the outstanding invoices relate to the rental costs of Evertson's rigs and equipment. The effects of Defendants' nonpayments were directly felt by Evertson in the United States.

**D.     Defendants Have Acknowledged Their Debts But Continue to Thwart Evertson's Collection Efforts**

33.     EIV has made significant efforts to collect on its outstanding billed receivables, but has thus far been unsuccessful. In an attempt to collect on the outstanding receivables, EIV and Evertson International held meetings with the Defendants to address payment of the receivables.

34.     During these meetings, Defendants never denied that they owed the amounts due under the invoices. To the contrary, Defendants acknowledged during these meetings that there were outstanding receivables owed to EIV. Nevertheless, Defendants would not pay. During meetings between Evertson International executives and executives of PDVSA Servicios Petroleros and Petrocedeño, Defendants stated that service providers (such as EIV) needed to remain actively operating in order to receive payments, putting Evertson International and EIV in an impossible position—they could stop operating (and stop receiving payments) or continue operating (and hope to be paid).

35.     Although EIV had the express contractual right to terminate the Services Contracts for Defendants' nonpayment, this was not a right that EIV could feasibly exercise without

12

expropriation of it business. Indeed, PDVSA repeatedly coerced Evertson to continue operating in Venezuela, threating both its employees and the business if it either stopped providing services or terminated the Services Contracts.

36.    Defendants specifically threatened to seize Evertson's equipment if it refused to continue operating due to the PDVSA Defendant's own failure to pay the outstanding receivables. In 2018, during a telephone conference between Evertson executives in Houston and a Petrocedeño executive, the Petrocedeño executive advised Evertson not to insist too strongly on collections, explaining that Venezuela's national priority was increasing oil production, and that if Evertson threatened to suspend service, they could seize the equipment. This was not an empty threat: PDVSA had expropriated another drilling company's equipment and took over its operations and supporting infrastructure in the years prior, yet paid nothing for it. The uncompensated, forcible taking of an entire drilling company's business in Venezuela was a reminder that Evertson could see the same fate if EIV stopped operating and attempted to exercise its contractual right to terminate the contracts before the term of the Services Contracts expired. Thus, Evertson was forced to (and coerced to) continue operating while millions of dollars in unpaid invoices accumulated.

37.    After EIV fulfilled its obligations under the Services Contracts, Evertson began winding down its operations in Venezuela but continued its efforts to collect on the outstanding receivables from the PDVSA Defendants. From March 2023 through March 2025, Evertson approached the PDVSA Defendants on numerous occasions to determine if they would be willing to pay some or all of the outstanding receivables. During this time, EIV was not performing and could not perform field work for PDVSA due to certain U.S. Executive Orders that imposed

sanctions with respect to transactions involving Venezuelan entities, including PDVSA.[5] During conversations with Defendants around this time, Defendants stated that their policy was to prioritize paying service providers with equipment actively working in PDVSA fields, and that EIV's outstanding receivables were not being selected for payment. Evertson has nevertheless continued to pursue collection efforts in hopes that PDVSA's policy would change, but to date, EIV has not received any further payments.

38.   Despite Defendant's discriminatory payment selection policy, Defendants have acknowledged their massive debts to Evertson. Specifically, on numerous occasions, certain Defendants have issued debt confirmation reports, which acknowledge the outstanding invoices in their accounting systems. For example, on February 24, 2023, Petromonagas signed a "*Certificación de deuda*" (Debt Certification), certifying that a debt of $3,665,909.78 remained pending and owed to EIV. The list of invoices—for work the Defendants already approved through the issuance of the Service Entry Sheets—and the amount owed for each invoice was attached to the debt certification.

39.   Similarly, on March 8, 2023, PDVSA Servicios Petroleros signed a "*Confirmacion de Deuda*" (Debt Confirmation) acknowledging that there was a debt to EIV amounting to $13,857,992.21. This Debt Confirmation also attached a list of the approved invoices, as they appeared in PDVSA Servicios Petroleros's SAP system, which supported the total amount of outstanding receivables owed to EIV.

40.   Additionally, on February 23, 2023 and again on February 29, 2024, Petrocedeño signed a document certifying that $3,501,730.87, Bs. 17,111,906.34, and EUR 692,770.76 remained open in its SAP system and due to EIV. This document likewise listed the individual,

---

[5] Executive Order 13808, Executive Order 13850, and Executive Order 13884 imposed sanctions with respect to the situation in Venezuela.

approved invoices that appeared in Petrocedeño's SAP system, and which supported the total amount of outstanding receivables owed to EIV.

41.     Ultimately, the PDVSA Defendants have not remitted any payments to Evertson since January 2020. Defendants' failure to pay has caused direct financial injury to Evertson in Texas, as Defendants were obligated to make payments in U.S. dollars into EIV's designated bank account in Texas, and Evertson was further renting its rigs and equipment (from Evertson International in Texas) to EIV and Defendants in Venezuela. EIV is part of a U.S.-based group of companies, and owned and operated by its U.S. management team. EIV rented the rigs and equipment it used to carry out the work under the Services Contracts from its U.S.-based Evertson affiliates. The U.S.-based Evertson affiliates expected to be paid in U.S. dollars in the United States for renting their equipment. But Defendants' failure to pay EIV's invoices and honor their contractual obligations directly impacted EIV's ability to, in turn, pay Evertson International for the rig and equipment rentals. As a result of Defendants' failures, Evertson was forced to sell off some of its rig fleet to keep its business afloat and employees employed. As such, Evertson felt the direct impact of Defendants' failures in the United States.

42.     Consistent with their obligations under the Services Agreements, from January 2015 to January 2020, Defendants paid hundreds of invoices with the payments going directly into EIV's Texas bank account. However, when Defendants breached their contractual obligations, payments that should have been made to this account were not made, having a direct effect on the United States.

43.     The collective impact of the Defendants' misdeeds, including both their contractual breaches as well as threats to keep Evertson from exercising its contractual rights, have seriously damaged Evertson. As a direct result of the PDVSA Defendants' breaches of their obligations

15

under the Services Contracts, Evertson has been forced to not only sell off some of its rig fleet, but to attempt to sell its debts, largely to no avail. Thus, Plaintiffs commenced this case to recoup the payments for which they are contractually and rightly owed.

**V.**
**CAUSES OF ACTION**

**COUNT 1 – BREACH OF CONTRACT**

**Count 1.A—Contract No. 4600044405 (Evertson-01)**
**(PDVSA, Petromonagas, and PDVSA Petróleo)**

44.    Plaintiffs incorporate by reference paragraphs 1 through 43 of the Complaint as if fully set forth herein.

45.    As described above, EIV and Petromonagas entered into a valid and enforceable contract, Contract No. 4600044405, in January 2016.

46.    EIV fully performed all obligations under Contract No. 4600044405 by completing certain work in accordance with the PDVSA Defendants' Well Operation Program. EIV then correctly invoiced Petromonagas and/or PDVSA Petróleo for work performed under the contract and in accordance with the administrative billing procedures.

47.    Contract No. 4600044405 was supported by consideration and entered into by individuals with the requisite authority to do so.

48.    Contract No. 4600044405 required Petromonagas and PDVSA Petróleo to make timely payments to EIV for its work completed under the contract.

49.    Petromonagas and PDVSA Petróleo failed to make timely and complete payments to EIV in accordance with their obligations under the contract, and to date, $79,166.03 in billed U.S.-denominated receivables, issued to Petromonagas and PDVSA Petróleo in August 2017, remain due and owing under the contract.

16

50.     Petromonagas and PDVSA Petróleo breached the contract by failing to make timely and complete payments under Contract No. 4600044405. The effects of these breaches have been directly felt by Plaintiffs in Texas.

51.     Due to Petromonagas's and PDVSA Petróleo's breaches of Contract No. 4600044405, Plaintiffs have suffered damages in the form of unpaid receivables.

52.     PDVSA is also liable for these breaches of contract under alter ego and corporate veil-piercing theories of liability, as PDVSA exercised complete control over the PDVSA Defendants, disregarded corporate formalities, and governed the PDVSA entities under a unified state-driven policy rather than at the separate entity level. Petromonagas, PDVSA Petróleo and PDVSA are thus jointly and severally liable for the damages to Plaintiffs.

53.     All conditions precedent necessary to maintain this cause of action have occurred, have been waived, or have been performed.

54.     Plaintiffs therefore seek their actual damages resulting from Petromonagas's and PDVSA Petróleo's failures to meet their contractual obligations under Contract No. 4600044405, including, without limitation, payment of all amounts owed to Plaintiffs, plus interest, court costs, and attorneys' fees.

### Count 1.B—Contract No. 4600010951 (Evertson-01)
### (PDVSA and Petromonagas)

55.     Plaintiffs incorporate by reference paragraphs 1 through 54 of the Complaint as if fully set forth herein.

56.     As described above, the EIV and Petromonagas entered into a valid and enforceable contract, Contract No. 4600010951, in January 2016.

57.     EIV fully performed all obligations under Contract No. 4600010951 by completing certain work in accordance with the PDVSA Defendants' Well Operation Program. EIV correctly

invoiced Petromonagas for work performed under the contract and in accordance with the parties' administrative billing procedures.

58.     Contract No. 4600010951 was supported by consideration and entered into by individuals with the requisite authority to do so.

59.     Contract No. 4600010951 required Petromonagas to make timely payments to EIV for its work completed under the contract.

60.     Petromonagas failed to make timely and complete payments to EIV in accordance with its obligations under the contract, and to date, $3,704,319.97 in billed U.S.-denominated receivables, issued to Petromonagas between November 2016 and November 2018, remain due and owing under the contract.

61.     Petromonagas breached the contract by failing to make timely and complete payments under Contract No. 4600010951. The effects of these breaches have been directly felt by Plaintiffs in Texas.

62.     Due to Petromonagas's breaches of Contract No. 4600010951, Plaintiffs have suffered damages in the form of unpaid receivables.

63.     PDVSA is also liable for these breaches of contract under alter ego and corporate veil-piercing theories of liability, as PDVSA exercised complete control over the PDVSA Defendants, disregarded corporate formalities, and governed the PDVSA entities under a unified state-driven policy rather than at the separate entity level. Petromonagas and PDVSA are thus jointly and severally liable for the damages to Plaintiffs.

64.     All conditions precedent necessary to maintain this cause of action have occurred, have been waived, or have been performed.

65.   Plaintiffs therefore seek their actual damages resulting from Petromonagas's failures to meet its contractual obligations under Contract No. 4600010951, including, without limitation, payment of all amounts owed to Plaintiffs, plus interest, court costs, and attorneys' fees.

**Count 1.C—Contract No. 4600055905 (Evertson-02)**
**(PDVSA, PDVSA Petróleo, and PDVSA Servicios Petroleros)**

66.   Plaintiffs incorporate by reference paragraphs 1 through 65 of the Complaint as if fully set forth herein.

67.   As described above, the EIV and PDVSA Servicios Petroleros entered into a valid and enforceable contract, Contract No. 4600055905, in 2015.

68.   EIV fully performed all obligations under Contract No. 4600055905 by completing certain work in accordance with the PDVSA Defendants' Well Operation Program. EIV correctly invoiced PDVSA Petróleo or PDVSA Servicios Petroleros for work performed under the contract and in accordance with the parties' administrative billing procedures.

69.   Contract No. 4600055905 was supported by consideration and entered into by individuals with the requisite authority to do so.

70.   Contract No. 4600055905 required PDVSA Petróleo and PDVSA Servicios Petroleros to make timely payments to EIV for its work completed under the contract.

71.   PDVSA Petróleo and PDVSA Servicios Petroleros failed to make timely and complete payments to EIV in accordance with its obligations under the contract, and to date, $6,336,598.13 in billed U.S.-denominated receivables, issued between December 2014 and November 2016, remain due and owing under the contract.

72.   PDVSA Petróleo and PDVSA Servicios Petroleros breached the contract by failing to make timely and complete payments under Contract No. 4600055905. The effects of these breaches have been directly felt by Plaintiffs in Texas.

19

73.    Due to PDVSA Petróleo's and PDVSA Servicios Petroleros's breaches of Contract No. 4600055905, Plaintiffs have suffered damages in the form of unpaid receivables.

74.    PDVSA is also liable for these breaches of contract under alter ego and corporate veil-piercing theories of liability, as PDVSA exercised complete control over the PDVSA Defendants, disregarded corporate formalities, and governed the PDVSA entities under a unified state-driven policy rather than at the separate entity level. PDVSA Servicios Petroleros, PDVSA Petróleo and PDVSA are thus jointly and severally liable for the damages to Plaintiffs.

75.    All conditions precedent necessary to maintain this cause of action have occurred, have been waived, or have been performed.

76.    Plaintiffs therefore seek their actual damages resulting from PDVSA Petróleo's and PDVSA Servicios Petroleros's failures to meet their contractual obligations under Contract No. 4600055905, including, without limitation, payment of all amounts owed to Plaintiffs, plus interest, court costs, and attorneys' fees.

### Count 1.D—Contract No. 4600077872 (Evertson-03)
**(PDVSA and Petrocedeño)**

77.    Plaintiffs incorporate by reference paragraphs 1 through 76 of the Complaint as if fully set forth herein.

78.    As described above, the EIV and Petrocedeño entered into a valid and enforceable contract, Contract No. 4600077872, in April 2018.

79.    EIV fully performed all obligations under Contract No. 4600077872 by completing certain work in accordance with the PDVSA Defendants' Well Operation Program and correctly invoiced Petrocedeño for work performed under the contract in accordance with the parties' administrative billing procedures.

80.     Contract No. 4600077872 was supported by consideration and entered into by individuals with the requisite authority to do so.

81.     Contract No. 4600077872 required Petrocedeño to make timely payments to EIV for its work completed under the contract.

82.     Petrocedeño failed to make timely and complete payments to EIV in accordance with its obligations under the contract, and to date, $423,517.23 in billed U.S.-denominated receivables, issued between December 2018 and January 2019, remain due and owing under the contract.

83.     Petrocedeño breached the contract by failing to make timely and complete payments under Contract No. 4600077872. The effects of these breaches have been directly felt by Plaintiffs in Texas.

84.     Due to Petrocedeño's breaches of Contract No. 4600077872, Plaintiffs have suffered damages in the form of unpaid receivables.

85.     PDVSA is also liable for these breaches of contract under alter ego and corporate veil-piercing theories of liability, as PDVSA exercised complete control over the PDVSA Defendants, disregarded corporate formalities, and governed the PDVSA entities under a unified state-driven policy rather than at the separate entity level. Petrocedeño and PDVSA are thus jointly and severally liable for the damages to Plaintiffs.

86.     All conditions precedent necessary to maintain this cause of action have occurred, have been waived, or have been performed.

87.     Plaintiffs therefore seek their actual damages resulting from Petrocedeño's failures to meet its contractual obligations under Contract No. 4600077872, including, without limitation, payment of all amounts owed to Plaintiffs, plus interest, court costs, and attorneys' fees.

### Count 1.E—Contract No. 4600068354 (Evertson-04)
### (PDVSA, PDVSA Petróleo and Petrocedeño)

88.     Plaintiffs incorporate by reference paragraphs 1 through 87 of the Complaint as if fully set forth herein.

89.     As described above, EIV, Petrocedeño and PDVSA Petróleo entered into a valid and enforceable contract, Contract No. 4600068354, in 2016.[6]

90.     EIV fully performed all obligations under Contract No. 4600068354 by completing certain work in accordance with the PDVSA Defendants' Well Operation Program. From December 2016 through February 2019, EIV correctly invoiced Petrocedeño and/or PDVSA Petróleo for work performed under the contract and in accordance with proper billing procedures.

91.     Contract No. 4600068354 was supported by consideration and entered into by individuals with the requisite authority to do so.

92.     Contract No. 4600068354 required Petrocedeño and PDVSA Petróleo to make timely payments to EIV for its work completed under the contract.

93.     Petrocedeño and PDVSA Petróleo failed to make timely and complete payments to EIV in accordance with their obligations under the contract, and to date, $7,685,470.02 in billed U.S.-denominated invoices, issued to Petrocedeño and PDVSA Petróleo between December 2016 and February 2019, remain due and owing under the contract.

94.     Petrocedeño and PDVSA Petróleo breached the contract by failing to make timely and complete payments under Contract No. 4600068354. The effects of these breaches have been directly felt by Plaintiffs in Texas.

---

[6] As noted above, contract number 3N-069-004-D-17-N-0361 was later assigned contract number 4600068354 in Defendant's system. Invoices issued under contract number 3N-069-004-D-17-N-0361 were issued to Petrocedeño, and invoices issued under contract number 4600068354 were issued to PDVSA Petróleo.

22

95.     Due to Petrocedeño's and PDVSA Petróleo's breaches of Contract No. 4600068354, Plaintiffs have suffered damages in the form of unpaid receivables.

96.     PDVSA is also liable for these breaches of contract under alter ego and corporate veil-piercing theories of liability, as PDVSA exercised complete control over the PDVSA Defendants, disregarded corporate formalities, and governed the PDVSA entities under a unified state-driven policy rather than at the separate entity level. Petrocedeño, PDVSA Petróleo, and PDVSA are thus jointly and severally liable for the damages to Plaintiffs.

97.     All conditions precedent necessary to maintain this cause of action have occurred, have been waived, or have been performed.

98.     Plaintiffs therefore seek their actual damages resulting from Petrocedeño's and PDVSA Petróleo's failures to meet their contractual obligations under Contract No. 4600068354, including, without limitation, payment of all amounts owed to Plaintiffs, plus interest, court costs, and attorneys' fees.

### Count 1.F—Contract No. 4600078385 (Evertson-05)
### (PDVSA and Petrocedeño)

99.     Plaintiffs incorporate by reference paragraphs 1 through 98 of the Complaint as if fully set forth herein.

100.    As described above, the EIV and Petrocedeño entered into a valid and enforceable contract, Contract No. 4600078385, in May 2018.

101.    EIV fully performed all obligations under Contract No. 4600078385 by completing certain work in accordance with the PDVSA Defendants' Well Operation Program. EIV correctly invoiced Petrocedeño for work performed under the contract and in accordance with the parties' administrative billing procedures.

23

102. Contract No. 4600078385 was supported by consideration and entered into by individuals with the requisite authority to do so.

103. Contract No. 4600078385 required Petrocedeño to make timely payments to EIV for its work completed under the contract.

104. Petrocedeño failed to make timely and complete payments to EIV in accordance with its obligations under the contract, and to date, $355,590.74 in billed U.S.-denominated receivables issued between December 2018 and January 2019 remain due and owing under the contract.

105. Petrocedeño breached the contract by failing to make timely and complete payments under Contract No. 4600078385. The effects of these breaches have been directly felt by Plaintiffs in Texas.

106. Due to Petrocedeño's breaches of Contract No. 4600078385, Plaintiffs have suffered damages in the form of unpaid receivables.

107. PDVSA is also liable for these breaches of contract under alter ego and corporate veil-piercing theories of liability, as PDVSA exercised complete control over the PDVSA Defendants, disregarded corporate formalities, and governed the PDVSA entities under a unified state-driven policy rather than at the separate entity level. Petrocedeño and PDVSA are thus jointly and severally liable for the damages to Plaintiffs.

108. All conditions precedent necessary to maintain this cause of action have occurred, have been waived, or have been performed.

109. Plaintiffs therefore seek their actual damages resulting from Petrocedeño's failures to meet its contractual obligations under Contract No. 4600078385, including, without limitation, payment of all amounts owed to Plaintiffs, plus interest, court costs, and attorneys' fees.

**Count 1.G—Contract No. Contract No. 3N-069-008-D-18-S-0046 (Evertson-06)**
**(PDVSA and Petrocedeño)**

110.    Plaintiffs incorporate by reference paragraphs 1 through 109 of the Complaint as if fully set forth herein.

111.    As described above, the EIV and Petrocedeño entered into a valid and enforceable contract, Contract No. 3N-069-008-D-18-S-0046, in August 2018.

112.    EIV fully performed all obligations under Contract No. 3N-069-008-D-18-S-0046 by completing certain work in accordance with the PDVSA Defendants' Well Operation Program. EIV correctly invoiced Petrocedeño for work performed under the contract and in accordance with the parties' administrative billing procedures.

113.    Contract No. 3N-069-008-D-18-S-0046 was supported by consideration and entered into by individuals with the requisite authority to do so.

114.    Contract No. 3N-069-008-D-18-S-0046 required Petrocedeño to make timely payments to EIV for its work completed under the contract.

115.    Petrocedeño failed to make timely and complete payments to EIV in accordance with its obligations under the contract, and to date, $417,511.07 in billed U.S.-denominated receivables, issued between December 2018 and February 2019, remain due and owing under the contract.

116.    Petrocedeño breached the contract by failing to make timely and complete payments under Contract No. 3N-069-008-D-18-S-0046. The effects of these breaches have been directly felt by Plaintiffs in Texas.

117.    Due to Petrocedeño's breaches of Contract No. 3N-069-008-D-18-S-0046, Plaintiffs have suffered damages in the form of unpaid receivables.

118.    PDVSA is also liable for these breaches of contract under alter ego and corporate veil-piercing theories of liability, as PDVSA exercised complete control over the PDVSA Defendants, disregarded corporate formalities, and governed the PDVSA entities under a unified state-driven policy rather than at the separate entity level. Petrocedeño and PDVSA are thus jointly and severally liable for the damages to Plaintiffs.

119.    All conditions precedent necessary to maintain this cause of action have occurred, have been waived, or have been performed.

120.    Plaintiffs therefore seek their actual damages resulting from Petrocedeño's failures to meet its contractual obligations under Contract No. 3N-069-008-D-18-S-0046, including, without limitation, payment of all amounts owed to Plaintiffs, plus interest, court costs, and attorneys' fees.

### Count 1.H—Contract No. 4600013750 (Evertson-07)
**(PDVSA and Petrocedeño)**

121.    Plaintiffs incorporate by reference paragraphs 1 through 120 of the Complaint as if fully set forth herein.

122.    As described above, the EIV and Petrocedeño entered into a valid and enforceable contract, Contract No. 4600013750, in February 2016.

123.    EIV fully performed all obligations under Contract No. 4600013750 by completing certain work in accordance with the PDVSA Defendants' Well Operation Program. EIV correctly invoiced Petrocedeño for work performed under the contract and in accordance with the parties' administrative billing procedures.

124.    Contract No. 4600013750 was supported by consideration and entered into by individuals with the requisite authority to do so.

125. Contract No. 4600013750 required Petrocedeño to make timely payments to EIV for its work completed under the contract.

126. Petrocedeño failed to make timely and complete payments to EIV in accordance with its obligations under the contract, and to date, $210,959.97 in billed U.S.-denominated receivables, issued in December 2018, remain due and owing under the contract.

127. Petrocedeño breached the contract by failing to make timely and complete payments under Contract No. 4600013750. The effects of these breaches have been directly felt by Plaintiffs in Texas.

128. Due to Petrocedeño's breaches of Contract No. 4600013750, Plaintiffs have suffered damages in the form of unpaid receivables.

129. PDVSA is also liable for these breaches of contract under alter ego and corporate veil-piercing theories of liability, as PDVSA exercised complete control over the PDVSA Defendants, disregarded corporate formalities, and governed the PDVSA entities under a unified state-driven policy rather than at the separate entity level. Petrocedeño and PDVSA are thus jointly and severally liable for the damages to Plaintiffs.

130. All conditions precedent necessary to maintain this cause of action have occurred, have been waived, or have been performed.

131. Plaintiffs therefore seek their actual damages resulting from Petrocedeño's failures to meet its contractual obligations under Contract No. 4600013750, including, without limitation, payment of all amounts owed to Plaintiffs, plus interest, court costs, and attorneys' fees.

### Count 1.I—Contract No. 4600067729 (Evertson-08)
### (PDVSA, PDVSA Servicios Petroleros and PDVSA Petróleo)

132. Plaintiffs incorporate by reference paragraphs 1 through 131 of the Complaint as if fully set forth herein.

133. As described above, EIV and PDVSA Servicios Petroleros entered into a valid and enforceable contract, Contract No. 4600067729, in 2017.

134. EIV fully performed all obligations under Contract No. 4600067729 by completing certain work in accordance with the PDVSA Defendants' Well Operation Program. EIV correctly invoiced PDVSA Servicios Petroleros and/or PDVSA Petróleo for work performed under the contract and in accordance with the parties' administrative billing procedures.

135. Contract No. 4600067729 was supported by consideration and entered into by individuals with the requisite authority to do so.

136. Contract No. 4600067729 required PDVSA Servicios Petroleros and PDVSA Petróleo to make timely payments to EIV for its work completed under the contract.

137. PDVSA Servicios Petroleros and PDVSA Petróleo failed to make timely and complete payments to EIV in accordance with its obligations under the contract, and to date, $3,591,934.89 in billed U.S.-denominated receivables, issued between July 2017 and April 2021, remain due and owing under the contract.

138. PDVSA Servicios Petroleros and PDVSA Petróleo breached the contract by failing to make timely and complete payments under Contract No. 4600067729. The effects of these breaches have been directly felt by Plaintiffs in Texas.

139. Due to PDVSA Servicios Petroleros's and PDVSA Petróleo's breaches of Contract No. 4600067729, Plaintiffs have suffered damages in the form of unpaid receivables.

140. PDVSA is also liable for these breaches of contract under alter ego and corporate veil-piercing theories of liability, as PDVSA exercised complete control over the PDVSA Defendants, disregarded corporate formalities, and governed the PDVSA entities under a unified

state-driven policy rather than at the separate entity level. PDVSA Servicios Petroleros, PDVSA Petróleo, and PDVSA are thus jointly and severally liable for the damages to Plaintiffs.

141.    All conditions precedent necessary to maintain this cause of action have occurred, have been waived, or have been performed.

142.    Plaintiffs therefore seek their actual damages resulting from PDVSA Servicios Petroleros's and PDVSA Petróleo's failures to meet its contractual obligations under Contract No. 4600067729, including, without limitation, payment of all amounts owed to Plaintiffs, plus interest, court costs, and attorneys' fees.

### COUNT 2 – ACKNOWLEDGEMENT OF DEBT
#### (All Defendants)

143.    Plaintiffs incorporate by reference paragraphs 1 through 142 of the Complaint as if fully set forth herein.

144.    In the alternative, Defendants have issued debt confirmation reports to EVI explicating recognizing the existence and amounts of certain outstanding receivables.

145.    On February 24, 2023, Petromonagas signed a "*Certificación de deuda*" (Debt Certification), certifying that a debt of $3,665,909.78 remained pending and owed to EIV. The list of pre-approved invoices and their amounts was attached to the debt certification.

146.    On March 8, 2023, PDVSA Servicios Petroleros signed a "*Confirmacion de Deuda*" (Debt Confirmation) acknowledging that there was a debt to EIV amounting to $13,857,992.21. This Debt Confirmation also attached a list of the pre-approved invoices that supported this debt.

147.    On February 23, 2023 and again on February 29, 2024, Petrocedeño signed a document certifying that $3,501,730.87, Bs. 17,111,906.34, and EUR 692,770.76 remained open

in its SAP system and due to EIV. This document likewise listed the pre-approved invoices that supported this debt.

148. Plaintiffs have made demands and attempted to collect on the acknowledged debts, but Defendants have thus far failed to make any payments despite their recognition and acknowledgment of the outstanding receivables.

149. Plaintiffs therefore seek their actual damages resulting from the Defendants' failures to meet their contractual obligations under the debt acknowledgments, including, without limitation, payment of all amounts owed to Plaintiffs, plus interest, court costs, and attorneys' fees.

## COUNT 3 – QUANTUM MERUIT
### (All Defendants)

150. Plaintiffs incorporate by reference paragraphs 1 through 140 of the Complaint as if fully set forth herein.

151. In the alternative, Defendants received services from Plaintiffs without compensating Plaintiffs for the value of those services or for the value of related costs, which were incurred for the benefit of performing work for Defendants.

152. Specifically, Plaintiffs performed various well rehabilitation services, drilling and completion services, and workover services related to PDVSA's oil and gas wells in Venezuela. Defendants accepted those services, and benefitted from the services Evertson provided.

153. Defendants knew or should have known that Plaintiffs expected compensation for the work performed, as they had paid Plaintiffs for similar work during the same period. Instead of paying Plaintiffs for their work and related costs, however, Defendants wrongfully withheld payment to Plaintiffs.

154. Plaintiffs expected compensation for the work, and the acknowledgement by Defendants of the work performed through the execution of Service Entry Sheets, resulted in over $22 million in damage to Plaintiffs.

155. Defendants are jointly and severally liable for the damages to Plaintiffs under alter ego and corporate veil-piercing theories of liability, as PDVSA exercised complete control over the PDVSA Defendants, disregarded corporate formalities, and governed the PDVSA entities under a unified state-driven policy rather than at the separate entity level.

## VI.
## PRAYER

Plaintiffs Evertson International de Venezuela, S.C.A. and Evertson International respectfully request that this Court enter a judgment against Defendants, including:

(a)    economic damages for breach of contract;

(b)    pre-judgment and post-judgment interest as provided by law;

(c)    costs of court permitted by law;

(d)    reasonable attorneys' fees, costs, and expenses as permitted by law; and

(e)    any other relief to which that the Court deems just and proper.

Date: April 20, 2026                    Respectfully submitted,

                                        **BAKER & McKENZIE LLP**


                                        By: */s/ David Baay*
                                            David Baay
                                            Texas Bar No. 24027050
                                            Federal ID # 598715
                                            Courtney Giles
                                            Texas Bar No. 24097736
                                            Federal ID # 2914730
                                            800 Capitol, Suite 2100
                                            Houston, Texas 77002
                                            Tel: (713) 427-5000
                                            Fax: (713) 427-5099
                                            david.baay@bakermckenzie.com
                                            courtney.giles@bakermckenzie.com

                                        **ATTORNEYS FOR PLAINTIFFS
                                        EVERTSON INTERNATIONAL DE
                                        VENEZUELA, S.C.A., and EVERTSON
                                        INTERNATIONAL**